SEARIGHT, THORNTON & Co., *vs.* ALBERT B. PAYNE & others.

## April Term, 1873.

PLEADING—PLEA BAD IN PART.—A plea in equity may, as to the extent of the bill covered by it, though not as to the matter of defense, be held good in part and bad in part.

SAME—CASE IN JUDGMENT.—Where, therefore, upon the issue of former suit pending, it appeared that the complainants and defendants were the same in both suits, but the object of the first bill was to set aside a deed of trust made by a corporation, and subject the property of the corporation, and also unpaid stock of the defendants as stockholders, to the satisfaction of complainants' claims as creditors of the corporation, and the object of this bill was to reach the same unpaid stock and to hold the defendants individually liable for the claims, the plea was allowed to stand as a defense to so much of the bill as sought to subject unpaid stock, but held insufficient in other respects.

SAME—PLEA IN ABATEMENT.—Where a plea in abatement is triable by record the judgment is *respondeat ouster.*

THE CHANCELLOR :—Upon the issue of former suit pending, it was referred to the clerk and master to examine and report whether the two suits were substantially the same. His report was, that while the parties in this cause were parties to the former suit, and the demands sued upon were the same, yet the two suits were not substantially the same, but essentially different. The defendant has excepted to the report upon the ground that the suits were between the same parties, upon the same demands, and for the same purposes. Under these circumstances, I have felt bound to examine the two bills, and compare them.

The first bill was filed by a number of persons claiming to be creditors of the Worley Furnace Company, and among others by the present complainants, against the said Worley Furnace Company, a body corporate chartered by the General Assembly of the State of Tennessee, J. M. Nash, J. C. McCrory, A. B. Payne, John Trenbath, and all other the stockholders of said company, and James Knight, M. B. Howell, clerk and master of this court, and Isaac Litton, receiver. It alleged that the defendants, except Knight, Howell and Litton, were, with one Jones, supposed to be dead, the stockholders of said Worley Furnace Company, and had been operating the furnace for some years in Dick-

son county, and until they had recently conveyed all the property and effects to defendant Litton in trust for creditors, giving preferences. That said stockholders had paid in a portion of the stock, but how much complainants did not know; that a large amount of such stock had not yet been paid in, or if so only nominally. That during the time the furnace was being run, the company contracted a great many debts for goods and supplies necessary in running the works, and among others the several debts to the complainants setting them out. That all of these debts were created upon the express promise of said stockholders that the capital stock was to be increased by additional amounts of capital to be paid in by them, which assurances were made to complainants at the time the several debts were created, and without which assurances the supplies, on which the debts were based, would not have been furnished. But the said company had made the assignment to Litton, and therein given a preference to pretended debts to defendants McCrory, Nash and Payne, which was a fraud upon complainants, and a ruse to get back money paid to said company by said defendants as so much stock. The bill also charges that the deed is void for matter apparent on its face. The bill prays that the property be attached, a receiver appointed, the deed declared void; that an account be taken between complainants and said Worley Furnace Company to ascertain what is due them, and that the property be sold to satisfy said debts; that the defendants show the amount of stock taken by each, how much was paid in and how, and that they be required to pay any balance of stock unpaid; that an account be taken between said stockholders and the company, and the balance found due from them subjected to the satisfaction of complainants' debts.

The present bill is filed by Searight, Thornton & Co. alone, on the same claims sued upon in the first bill, against the Worley Furnace Company, A. B. Payne, John Trenbath, J. C. McCrory, W. F. Foster administrator of J. M. Nash, and S. E. Jones, the last of whom seems to have come to

life since the first bill was filed. The bill alleges that the Worley Furnace Company was incorporated by an act of the legislature, which required a subscription of $50,000 of stock as a condition precedent to its legal existence; that Payne, Nash, McCrory and Trenbath were commissioners to secure this stock, and as such disregarded the law, and entered into a combination in the disguise of a corporation without any stock being *bona fide* subscribed or paid in; that they fraudulently concealed the facts, and thereby obtained credit; that the furnace property was purchased on credit, and after it had been conveyed to Litton for the benefit of creditors, and after "a bill was filed to wind up the company under the assignment," it was found that the company was indebted to the clerk and master of the court $17,500 for the furnace; that the property was sold to pay this debt, for which a lien had been retained, and was bid off at that price for the parties interested, so the creditors got nothing. That at the time of the assignment the company were indebted to complainants by two notes, and an account, one note signed by Nash as president and Payne as secretary, the other by Payne only as secretary; that Payne and Nash applied in person to complainants for credit, and not only represented the company as solvent, "but said they would see to it personally, that the goods were paid for and in a short time;" and " did defraud" complainants out of their merchandize for the several amounts named. That the goods thus procured were retailed by defendants for a profit; that the company was chartered to make iron, not to merchandise; that the defendants are consequently liable to complainants as partners under the firm name of the Worley Furnace Co.; that they are also liable to complainants personally for their fraud and bad faith; and especially Nash and Payne. The bill prays for such relief accordingly. It also prays, if it should be true that there was stock taken and not paid in, that they have satisfaction out of it, if the exigencies make it necessary to seek relief in that direction.

An amended bill was filed setting up other claims against

said company of which complainants had become the assignees, the assignors of which claims were parties complainant to the former suit in right of such claims. The amended bill undertook to detail other facts tending to show the fraud of the defendants.

The result of the analysis of the two suits is :

1st. That the complainants are parties to both and upon the same demands.

2d. That the defendants are the same. Jones, the only stockholder specifically named in the last bill in addition to stockholders named in the first bill, having in fact been made a defendant to such first bill under the general designation of " all other stockholders of said company."

3d. The object of the two suits is the same so far as that object is to reach the stock subscribed but never paid in by the defendants.

But here the identity of the two cases ceases. The main object of the first was to reach the property of the company, by setting aside the deed of trust, and subjecting the unpaid stock due by the stockholders to the company.

The main object of the second bill, is to charge the defendants personally with the complainants debts, upon the grounds of fraudulent concealment, fraudulent representations, and fraudulent conduct; and because the purchase of the goods from the complainants and the selling them by retail was not a corporation purpose, but outside of the charter, and made the defendants liable as partners.

The clerk and master is clearly correct therefore in saying that the two suits are not substantially the same. The plea is not, consequently, true as alleged. But it is true as to so much of the present bill as seeks to hold the defendants liable as stockholders for unpaid stock. Unlike a demurrer, a plea may be bad in part and not in the whole. Story Eq. Pl. § 692. *Derby* v. *Duke of Athol*, 1 Ves. 205 ; *Dormer* v. *Fortescue*, 2 Atk. 282 ; *French* v. *Shotwell*, 5 John Ch. 555, 562. This is true only as to the extent of the bill covered by it, not as to the defense set up by the plea. Dan. Ch. Pr. 686,

687. This distinction is obviously sound and proper. A single defense, which is the essential characteristic of a plea, would, of course, be no longer a defense if any part of it which went to constitute its entirety was defective. And, on the other hand, a defense, defective as to the whole bill, might yet be complete as to a specific part of it. The case before us affords a good illustration. It would be manifestly wrong to permit these complainants to harrass the defendants with two suits about the same matter, and yet clearly just to allow them to seek redress not within the scope or intention of the former suit. I will allow the plea, therefore, to stand as a good defense to so much of the bill as seeks to hold the defendants liable for unpaid stock, and overrule it in other respects.

By the Code § 4393 it is provided : "If the plea be found false, the complainant shall have the same advantages as if it had been so found by a verdict at common law." After a verdict at common law, even upon a plea in abatement, where the issue is to the country, there is no *respondeat ouster*. *Bacon* v. *Parker*, 2 Tenn. 55 ; *Straus* v. *Weil*, 5 Cold. 126. But see *Kendrick* v. *Davis* 3 Cold. 526, where the ruling, upon a plea in abatement by the Chancellor finding it false, was otherwise. Where a plea in abatement is triable by record, as in this case, the judgment at common law is *respondeat ouster*. *Marston* v. *Lawrence*, 1 Johns. Cases 398. The defendants will be required to answer the residue of the bill not covered by the plea as allowed, within twenty days, so as not to delay the hearing.

The English practice upon a plea of former suit pending is for the complainant not to reply to the plea, even if he disputes the fact, but to obtain a reference to the master within a month after plea is filed. Lord Clarendon's Orders, Beames' 17. See *Baker* v. *Bird* 2 Ves. Jr. 672. Or, he may admit as much of the plea as he likes, and take a reference for the remainder. Dan. Ch. Pr. 797. By the New York practice, the defendant was required upon filing the plea to

enter an order of reference to a master to examine and report whether the plea be true. 1 Hoff. Ch. Pr. 225.

I have already decided at this term of the court, in the case of *Montgomery* v. *Olwell Bros.*, that the proper practice under the Code, § 4393, is for the complainant, if he thinks the plea not good in form or substance, to set it for hearing on its sufficiency, and, if he thinks it good but not true, to take issue upon it. In the latter event a serious difficulty arises. Is the reference provided for by the English and New York Rules done away with by the Code? Or, rather, in the absence of any Rule of our own on the subject, is the defendant entitled to take his own time in filing the evidence to sustain his plea, or can the complainant make a rule on him to file it within a given time, or can the court, *mero motu*, make the reference? I am inclined to think that when the former suit is pending in his own court, the Chancellor has the power to make the reference for himself; this was the course pursued in the present instance, and the practice seems to have been approved by the supreme court in *Green* v. *Neal*, 2 Heisk. 217 ; at any rate it was the course pursued in the court below and passed *sub silentio* by the supreme court. It is obvious, however, that this mode of determining the fact cannot be resorted to when the former suit is pending in another court. There ought, therefore, to be a Rule of court requiring the defendant, in the latter class of cases, to file a certified copy of the record on which he relies as evidence within a reasonable time, say twenty days, from the filing of the complainant's replication of *nul tiel* record. And, perhaps, it would not be amiss to extend the Rule so as to make it his duty to take the order of reference as soon as issue is joined on his plea where the former suit is in the same court. The suggestion is made for the consideration of counsel with a view to the drafting of a general order on the subject, if deemed advisable.